UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR EDWARD WILLIAMS, III,              Case No. 12-15156

             Plaintiff,                    Patrick J. Duggan
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

             Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 18)

**I.      PROCEDURAL HISTORY**

      A.      Proceedings in this Court

On November 21, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 16, 18).  Plaintiff also filed a reply in support of his motion.  (Dkt. 19).

B.    Administrative Proceedings

Plaintiff filed the instant claims on October 6, 2009, alleging that she became disabled on August 7, 2008.  (Dkt. 11-2, Pg ID 56).  The claim was initially disapproved by the Commissioner on January 7, 2010.  (Dkt. 11-2, Pg ID 56).  Plaintiff requested a hearing and on March 24, 2011, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Mary S. Connolly, who considered the case de novo.  In a decision dated June 20, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 56-64).  Plaintiff requested a review of this decision and on September 20, 2012, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council denied plaintiff's request for review.  (Dkt. 11-2, Pg ID 45-47); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 37 years old on the alleged disability onset date. (Dkt. 11-2, Pg ID 63). Plaintiff's past relevant work included work as a construction worker. (Dkt. 11-2, Pg ID 63). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 11-2, Pg ID 58). At step two, the ALJ found that plaintiff's left hip disorder was "severe" within the meaning of the second sequential step. (Dkt. 11-2, Pg ID 58). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 11-2, Pg ID 59). At step four, the ALJ found that plaintiff could not perform his previous work. (Dkt. 11-2, Pg ID 63). The ALJ concluded that plaintiff had the residual functional capacity to perform the full range of sedentary work. (Dkt. 11-2, Pg ID 59). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 11-2, Pg ID 63).

### B.   Plaintiff's Claims of Error

According to plaintiff, the ALJ failed to state what specific weight was

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 12-15156

afforded to the opinion of treating physician Dr. Kelley.  The ALJ has a "clear duty 'to always give good reasons [in her decision] for the weight [given] to a treating source's opinion.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting 20 C.F.R. § 404.1527(d)(2).  "This requirement is not simply a formality; it is to safeguard the [Plaintiff's] procedural rights." *Cole*, 661 F.3d at 837.  Here, the ALJ afforded "significant weight" to psychological consultative examiner Dr. Bishop and "some weight" to State agency consultant Fred Greaves, Ed.D., who completed a psychiatric review technique form. (Tr. 18).  However, plaintiff contends that with respect to his physical RFC, it is unclear as to the weight the ALJ afforded to the opinions of treating physician Dr. Kelley as it was not stated in the ALJ's decision.  Accordingly, because the ALJ failed to assign a particular weight to Dr. Kelley's opinions, plaintiff contends that the matter should be remanded for a proper evaluation of Dr. Kelley's opinion.

Next, plaintiff argues that the ALJ erred in according inadequate weight to the opinion of examining physician Dr. Jamieson and failed to reconcile the RFC determination with Dr. Jamieson's opinion.  The ALJ also failed to state what particular weight was assigned to Dr. Jamieson's opinion, except by implication that it was afforded less weight than Dr. Kelley's opinion even though Dr. Kelley's opinion was not weighed.  Here, the ALJ stated "it is noted that the limitations prescribed by the [Plaintiff's] own treating doctor . . . are more

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 12-15156

restrictive than those of the consultative examiner's, and are accepted into the residual functional capacity assessment. Therefore the issue is moot" (referring to the ALJ's decision denying Plaintiff's hearing counsel an opportunity to examine Dr. Jamieson). (Tr. 17). The ALJ further failed to reconcile the RFC determination with Dr. Jamieson's opinion. "The ALJ is required to evaluate every medical opinion of record." *Sams-Schwartz v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 63631, at *10 (E.D. Mich. 2011) (Duggan, J.), citing 20 C.F.R. § 404.1527(b), (d). Moreover, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The ALJ stated Plaintiff's RFC assessment "is supported by the [Plaintiff's] hospital and treating records," which included Dr. Jamieson. (Tr. 18). Therefore, plaintiff contends that the weight the ALJ assigned to Dr. Jamieson's opinion is unclear.

Furthermore, plaintiff argues that the ALJ erred by failing to reconcile Dr. Jamieson's opinion with the RFC determination because the RFC determination that plaintiff can perform a full range of sedentary work failed to contain any limits as to Plaintiff's ability to sit. (Tr. 15). Dr. Jamieson opined that plaintiff could only sit 45 minutes at one time without interruption. (Tr. 532). With respect to the ability to perform a full range of sedentary work, the regulations state that an individual: must be able to remain in a seated position for

approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.  If an individual is unable to sit for a total of 6 hours in an 8 hour workday, the unskilled sedentary occupational base will be eroded.  SSR 96-9p.  Here, Dr. Jamieson opined plaintiff's sitting limitations were more restrictive than the ability to perform a full range of sedentary work given plaintiff could not sit for two hour intervals.  (Tr. 532).  Moreover, plaintiff contends that the ALJ's explanation that treating physician Dr. Kelley's limitations for plaintiff were more restrictive than that of Dr. Jamieson's opinion as to plaintiff's limitations is not a proper explanation as to why Dr. Jamieson's opinion was not adopted given Dr. Jamieson opined more restrictive sitting limitations.  Thus, the ALJ erred in weighing Dr. Jamieson's opinion and failed to reconcile the RFC determination with medical opinion evidence in accordance with SSR 96-8p.  Accordingly, plaintiff maintains that this matter should be remanded so that the medical opinions can be properly weighed.

Plaintiff also finds fault with the ALJ's statement that "[i]n sum, the above residual functional capacity assessment is supported by the [plaintiff's] hospital and treating records."  (Tr. 18).  Plaintiff contends that this was error as it is unclear as to which hospital and treating records the ALJ relied on in determining plaintiff's RFC.  Plaintiff points out that the ALJ must "prepare a written decision that explains in clear and understandable language the specific reasons for the

decision," 20 C.F.R. § 405.370(a) and that an "ALJ's failure to follow . . .

procedural rule[s] does not qualify as harmless error where [a reviewing court]

cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (citations omitted). Moreover, "It

is more than merely helpful for the ALJ to articulate reasons . . . for crediting or

rejecting particular sources of evidence. It is absolutely essential for meaningful

appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517,

519 (6th Cir. 1985) (internal quotation marks omitted). Here, with respect to

plaintiff's RFC, plaintiff contends that it is unclear as to what treating and hospital

records the ALJ considered, especially considering the absence of weight given to

treating physician Dr. Kelly and examining physician Dr. Jamieson as discussed

above. For instance, even though the ALJ recited parts of Dr. Jamieson's opinion,

she failed to state what particular portions of Dr. Jamieson's opinion were

considered in determining Plaintiff's RFC. Further, plaintiff argues that it is also

unclear which of Dr. Kelley's records the ALJ used to support plaintiff's RFC.

For example, it is unclear whether the ALJ considered Dr. Kelley's finding on

May 12, 2009 that plaintiff had "difficulty with single leg balance" and plaintiff's

reports to Dr. Kelley on August 14, 2009 that he had difficulty balancing. (Tr.

298, 300). According to plaintiff, knowing whether the ALJ considered these

records is important considering when "an individual is limited in balancing even

when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." SSR 96-9p. Further, the ALJ stated that plaintiff "had no limp as of September 16, 2009." (Tr 17). However, the treatment records indicate Dr. Kelley found plaintiff to be walking with a limp during an examination on May 17, 2010. (Tr. 473). Therefore, plaintiff maintains that it is unclear on what evidence the ALJ relied in formulating the RFC because the ALJ inaccurately evaluated the record and it is otherwise unclear. Therefore, plaintiff requests that the matter be remanded for the preparation of a clearly written opinion that includes a clear explanation of which records the ALJ used in formulating her RFC determination. *See* 20 C.F.R. § 405.370 (An ALJ is required to "prepare a written decision that explains in clear and understandable language the specific reasons for the decision.").

Plaintiff next asserts that the ALJ's credibility determination is unsupported by substantial evidence. The ALJ found that plaintiff's medically determinable impairments "could reasonably be expected to produce the symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (Tr. 16). However, plaintiff contends that this conclusion is unsupported by substantial evidence, and is legally erroneous. Once an ALJ has found an underlying medically determinable

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 12-15156

impairment that could reasonably be expected to produce a claimant's pain and other symptoms, he is required to evaluate the intensity and persistence of the symptoms. *See* 20 C.F.R. § 404.1529(c)(1). In doing this, the regulations state that the following factors will be considered: (i) Daily activities; (ii) The location, duration, frequency, and intensity of pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) Treatment, other than medication, received for relief of pain or other symptoms; (vi) Any measures used to relieve pain or other symptoms; and (vii) Other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), SSR 96-7p.

First, with respect to daily activities, the ALJ relied on plaintiff's answers to questions on a November 10, 2009 function report to determine plaintiff could "do household chores." (Tr. 16, 191-98). However, plaintiff argues that the ALJ here, similar to the ALJ in *Rogers v. Comm'r of Soc. Sec*, 486 F.3d 284, 248-49 (6th Cir. 2007), "mischaracterized Plaintiff's testimony regarding the scope of her daily activities, [and] also fail[ed] to examine the physical effects coextensive with their performance." Plaintiff testified that his mother does the dishes and laundry. (Tr. 33). Further, these activities do not undercut his credibility with regard to an inability to work on a regular and continuing basis (8 hours a day, for 5 days a

week, or an equivalent work schedule).  SSR 96-8p.  Second, regarding plaintiff's limitations, the ALJ's decision does not reveal that he considered plaintiff's testimony that his left leg must always be stretched out when he is sitting.  (Tr. 34).  Further, the ALJ stated "[Plaintiff] does not require an ambulatory aid to walk."  (Tr 16).  However, plaintiff testified he had to have a cane to support himself if he was on his feet more than 15 to 20 minutes.  (Tr. 34).  Moreover, Dr. Jamieson opined that plaintiff "ha[d] to use a cane for ambulation."  (Tr. 530). Third, the ALJ's finding that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above-listed residual functional capacity assessment" was erroneous.  (Tr. 16).  According to plaintiff, it is improper to question plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ.  Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p.  Therefore, the ALJ erred by considering the consistency of plaintiff's statements with the ALJ's own RFC finding instead of evaluating all of the required factors bearing on plaintiff's credibility prior to deciding the RFC. In sum, plaintiff contends that the ALJ's credibility determination is unsupported by substantial evidence and requests that this matter be remanded for a proper credibility determination.

The ALJ found at step five that there are jobs that exist in significant numbers in the national economy that plaintiff can perform using the Medical Vocational Guidelines. (Tr. 19). Plaintiff contends, however, that the ALJ's determination is unsupported by substantial evidence because the ALJ's errors in determining plaintiff's RFC and credibility render the step five determination unsupported by substantial evidence.

C.   Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ properly found that, despite plaintiff's left hip disorder, he was not disabled because he had the residual functional capacity to perform a full range of sedentary work. (Tr. 14-20). In reaching this conclusion, the ALJ relied on plaintiff's "hospital and treatment records" and treating physician Dr. Kelly's opinion that plaintiff could perform "sit-down work" that did not involve lifting more than 20 pounds, walking more than 15 minutes per hour, or roofing and construction work. (Tr. 18, 474). No medical source opinion concluded that plaintiff was physically unable to work, and the Commissioner contends that none of plaintiff's attacks on the ALJ's opinion warrant reversal.

While plaintiff complains that the ALJ failed to state what weight she gave to Dr. Kelly's opinion, the Commissioner contends that this argument should be rejected. A treating physician's opinion is entitled to "controlling weight" if it is

"well-supported by medically acceptable diagnostic techniques and is not inconsistent with other evidence."  20 C.F.R. § 404.1527(d)(2).  Here, according to the Commissioner, it is evident that the ALJ gave Dr. Kelly's opinion controlling weight even if she did not expressly say so.  The ALJ stated that she "accepted" Dr. Kelly's opinion "into the residual functional capacity assessment." (Tr. 17).  To that end, the ALJ fully incorporated Dr. Kelly's conclusion that plaintiff was limited to "sit-down work" into her residual functional capacity assessment that plaintiff could perform "sedentary work."  (Tr. 15-18).  Indeed, "a sedentary job is defined as one which involves sitting."  20 C.F.R. § 404.1567(a). The Commissioner maintains that the fact that the ALJ did not use the words "controlling weight" is irrelevant.  As the Sixth Circuit noted, "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

Next, while plaintiff claims that the ALJ did not "reconcile" her decision to accept Dr. Kelly's opinion, that limited plaintiff to sit-down work, with examining physician Dr. Jamieson's opinion, that limited plaintiff to sitting for only 45 minutes at a time, the Commissioner also contends that this argument lacks merit.

Plaintiff makes much of the fact that Dr. Jamieson limited plaintiff to sitting for 45 minutes at time, but, according to the Commissioner, this limitation appears to be based on plaintiff's subjective statements about the length of time he could sit, rather than on examination findings.  (Tr. 528).  An ALJ need not accept medical opinion based on a claimant's "own subject accounts" of his symptoms.  *Swain v. Comm'r of Soc. Sec.*, 379 Fed.Appx. 512, 517 (6th Cir. 2011).  Moreover, aside from the sitting limitation, the Commissioner also points out that Dr. Jamieson's opinion was less restrictive than Dr. Kelly's.  (Tr. 528-36, 474).  Dr. Jamieson found that plaintiff could lift 50 pounds occasionally and 20 pounds frequently, and that he could sit, stand or walk each for 5 hours in an 8-hour work day.  (Tr. 531-32).  This means that Dr. Jamieson found plaintiff capable of work in the light to medium range.  Thus, even if the ALJ failed to reconcile Dr. Jamieson's opinion with Dr. Kelly's opinion or otherwise gave more weight to Dr. Jamieson's opinion, the Commissioner argues that plaintiff still would not be considered disabled.  On the contrary, he would be able to perform a greater range of jobs than the ALJ determined.

In any event, the Commissioner maintains that ALJ's decision to accept Dr. Kelly's opinion over Dr. Jamieson's was consistent with the regulations and the record evidence.  According to the Commissioner, it is highly unusual for disability claimants to argue that the ALJ should have accepted an examining

physician's opinion over a treating one, and plaintiff does not explain why the ALJ should have done so in this case. The Commissioner contends that Dr. Kelly's opinion was "well-supported by medically acceptable diagnostic techniques and [was] not inconsistent with other evidence." 20 C.F.R. § 404.1527(d)(2). In particular, Dr. Kelly's opinion was consistent with his treatment notes from 12 examinations and two surgeries demonstrating that plaintiff's hip replacement was successful, that he had pain but was generally doing well, and that he had a good range of motion and no longer limped. (Tr.17, 297, 298, 299, 301, 303, 304, 305, 306, 309, 310, 317, 320, 327, 473). His opinion also was consistent with his previous restrictions barring plaintiff from any "ladder climbing" or "roof work" and requiring that he "remain on level surfaces and be able to sit for five to ten minutes every hour." (Tr. 301). In addition, while Dr. Kelly examined Plaintiff 12 times and operated on him twice (Tr.17, 297, 298, 299, 301, 303, 304, 305, 306, 309, 310, 317, 320, 327, 473), Dr. Jamieson examined plaintiff once. (Tr. 528-36). "When the treating source has seen you a number of times and long enough to have obtained a longitudinal treatment picture of your impairment, we will give the source's opinion more weight than we would give it if it were a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i). This treatment relationship afforded Dr. Kelly expansive knowledge of plaintiff's hip condition. He operated on plaintiff twice,

monitored his recovery for both surgeries, conducted several hip examinations,

treated his pain.  (Tr.17, 297, 298, 299, 301, 303, 304, 305, 306, 309, 310, 317,

320, 327, 473).  "When the treating source has reasonable knowledge of your

impairment(s), we will give the source's opinion more weight than we would give

it if it were from a nontreating source."  20 C.F.R. § 404.1527(d)(5).  Therefore,

the Commissioner asserts that the ALJ properly gave Dr. Kelly's opinion

controlling weight and plaintiff has not demonstrated that her decision to do so

was unsupported by substantial  evidence.

And, while plaintiff argues that the ALJ did not identify what "hospital and

treatment records" she relied on in determining that plaintiff could perform

sedentary work (Tr. 18; Pl. Br. 16-17), the Commissioner argues that is not true.

Rather, according to the Commissioner, the ALJ discussed the medical records she

relied on in her decision, including Dr. Kelly's treatment records, hospital records

from plaintiff's surgeries, and hospital records from plaintiff's van accident.  (Tr.

17).  In sum, the ALJ's residual functional capacity assessment was

well-supported and should be affirmed.

The ALJ concluded that plaintiff was "credible regarding having limitations

with pain and certain movements," but found that certain of his statements were

inconsistent and not fully credible.  (Tr. 16, 18).  In particular, the ALJ pointed out

that plaintiff's hearing testimony conflicted with his function reports.  At the

hearing, plaintiff testified that he spent half of his day lying in bed watching television, could not wash clothes and had his mother do it for him, did not socialize with others, and could not do what he used to do. (Tr. 16, 31, 33, 38). In his function reports, however, plaintiff stated that he went out every day, performed household chores, drove a car, went places alone, fished, played cards and board games with others, and had no change in social activities since the onset of his impairments. (Tr. 16, 193-197). In addition, the ALJ noted that plaintiff appeared with a cane at the hearing and at his examination with Dr. Jamieson. (Tr. 16-17, 33-34, 530, 532). But in his function reports, plaintiff stated that he did not need to use any ambulatory devices (Tr. 16, 197), and none of Dr. Kelly's treatment notes indicated that plaintiff had to use one. The Commissioner contends that the court should defer to an ALJ's credibility determination where, as here, there are "demonstrable discrepancies" in a claimant's testimony. *Gooch v. Sec'y of Health & Human Servs*., 833 F.2d 589, 592 (6th Cir. 1987). The Sixth Circuit has held that it accords great deference to an ALJ's credibility assessment, particularly because the ALJ had the opportunity to observe the demeanor of a witness while testifying. *Jones v. Commissioner*, 336 F.3d 469, 476 (6th Cir. 2003). Here, the Commissioner urges the Court to affirm the ALJ's well-supported credibility finding.

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 12-15156

D.   Plaintiff's Reply

While the Commissioner argues "it is evident that the ALJ gave Dr. Kelley's opinion controlling weight even if she did not expressly say so" because the ALJ stated she "accepted" Dr. Kelley's opinion into the RFC assessment, plaintiff contends that the Commissioner is engaging in post-hoc rationalization as the ALJ never explicitly stated that Dr. Kelley's opinion was afforded "controlling weight," and it is otherwise unclear from the decision that the ALJ relied on Dr. Kelley's opinion that plaintiff could perform "sit-down work" in formulating the RFC determination.  According to plaintiff, it is the ALJ's stated rationale, not counsel's rationale, that is under review.  *Hairston v. Astrue*, 2013 U.S. Dist. LEXIS 46516, at *10 (E.D. Mich. 2013) (Cook Jr., J.) (citations omitted). Moreover, the ALJ failed to detail the weight afforded to the opinion, which is in contrast to his detailing of weight to other sources' opinions.  Accordingly, as the ALJ failed to assign a particular weight to Dr. Kelley's opinion, plaintiff asserts that this matter should be remanded for a proper evaluation of Dr. Kelley's opinion.

While the Commissioner argues that the ALJ properly rejected Dr. Jamieson's opinion that limited plaintiff to only sitting 45 minutes at a time because "this limitation appears to be based on plaintiff's subjective statements about the length of time he could sit, rather than on examination findings,"

plaintiff contends that the Commissioner is again engaging in a post-hoc rationalization as the ALJ offered no such explanation for rejecting Dr. Jamieson's opined limitations. (Tr. 12-20). Contrary to the Commissioner's argument, plaintiff is not suggesting that Dr. Jamieson's opinion should have been afforded more weight than the opinion of treating physician Dr. Kelley. Plaintiff's initial brief points out that the ALJ discusses less restrictive sitting limitations opined by Dr. Kelley (the plaintiff must be able to sit for five to ten minutes every hour) versus the more restrictive sitting limitations opined by Dr. Jamieson (that Plaintiff can only sit for 45 minutes at one time). Thus, the ALJ's rationale is incorrect as Dr. Jamieson opined more restrictive sitting limitations than Dr. Kelley, and therefore the ALJ did not provide a proper rationale for rejecting that portion of Dr. Jamieson's opinion. Thus, according to plaintiff, the ALJ's improper rationale caused her to err in weighing Dr. Jamieson's opinion, leading her to fail to reconcile the RFC determination with medical opinion evidence in accordance with SSR 96-8p. Accordingly, plaintiff contends that this matter should be remanded so that Dr. Jamieson's opinion can be properly weighed under an appropriate rationale.

While the Commissioner argues the ALJ appropriately supported her RFC determination through her discussion and reliance on the medical records, plaintiff contends that the absence of weight given to treating physician Dr. Kelley and

consultative examiner Dr. Jamieson, and the ALJ's failure to state what particular portions of Dr. Jamieson's opinion she adopted, render the ALJ's decision unclear as to what evidence she relied upon in her RFC determination. *See* 20 C.F.R. § 405.370 (An ALJ is required to "prepare a written decision that explains in clear and understandable language the specific reasons for the decision.").

And, plaintiff contends that the Commissioner is again engaging in a post-hoc rationale by pointing out the inconsistency of Plaintiff's answers in his function reports versus his answers during the ALJ hearing because the ALJ never indicated that she discounted plaintiff's credibility on such a basis. (Tr. 16-18); Further, with respect to plaintiff's use of an ambulatory aid, the Commissioner argues the ALJ properly asserted that plaintiff did not need an ambulatory aid to walk because the use of a cane did not appear in Dr. Kelley's treatment notes. However, plaintiff contends that the Commissioner is again engaging in a post-hoc rationalization as the ALJ offered no such explanation for his statement concerning plaintiff's use of an ambulatory aid. (Tr. 16). Moreover, Dr. Jamieson opined plaintiff needed to use a cane to ambulate. In sum, plaintiff maintains that the ALJ erred in finding that plaintiff is not a credible witness and urges the Court to remand this matter for a proper credibility determination.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis and Conclusions</u>

Social Security Ruling 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors

in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used." As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions he makes." *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, at *4 (6th Cir. 1999). The opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968 (S.D. Ohio 2009). This is so because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL 374180.

Moreover, "the courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 1993 WL 361792, *6 (6th Cir. 1993), quoting *Motor Vehicle Mfrs. Ass'n*

*v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted). "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

In the view of the undersigned, there are several problems with the ALJ's analysis in this case.  Setting aside for a moment whether the ALJ properly articulated the weight she gave to the medical opinions in this case, it is unclear from the ALJ's opinions whether she considered the extent to which some of the limitations imposed by these opinions eroded the occupational base.  Without a more detailed discussion and analysis, it is impossible for this Court to know what the ALJ considered and rejected.  Specifically, the ALJ "accepted" Dr. Kelley's opinion that plaintiff could do a "sit-down" job.  But, the ALJ also sent plaintiff for consulting examination after the hearing for an updated medical opinion regarding plaintiff's functional limitations because he had not seen Dr. Kelley in over a year as plaintiff had not been able to afford it.

While Dr. Jamieson opined that plaintiff could lift in excess of the maximum for sedentary work, Dr. Jamieson also imposed additional restrictions on plaintiff that the ALJ did not discuss, some of which may erode the occupational base for sedentary work.  Specifically, Dr. Jamieson found that

plaintiff could never "stoop."  According to the SSA's own guidance, "[a]

complete inability to stoop would significantly erode the unskilled sedentary

occupational base and a finding that the individual is disabled would usually

apply, but restriction to occasional stooping should, by itself, only minimally

erode the unskilled occupational base of sedentary work. Consultation with a

vocational resource may be particularly useful for cases where the individual is

limited to less than occasional stooping."  Titles II & XVI: Determining Capability

to Do Other Work-Implications of A Residual Functional Capacity for Less Than

A Full Range of Sedentary Work, SSR 96-9p (S.S.A July 2, 1996).  While Dr.

Kelley made no finding in this regard, his lack of opinion on this specific issue

does not mean that he concluded that plaintiff had no limitation in this area.  Dr.

Kelley offered a very short opinion regarding plaintiff's ability to work that did

not include all the limitations considered by Dr. Jamieson.  Of course, Dr. Kelley

was not asked to provide the extensive opinion that Dr. Jamieson was asked to

provide, so the fact that he did not analyze the dozens of potential limitations

included in Dr. Jamieson's opinion is not surprising.  And, under these

circumstances, Dr. Kelley's lack of an opinion on "stooping" does not necessarily

mean that he has opined that plaintiff has an unlimited ability to stoop.  And in this

case, the ALJ never discussed stooping in her opinion at all.  In light of Dr.

Jamieson's opinion on this issue, and the potential erosion of the sedentary

occupational base because of this limitation, the ALJ should have expressly

considered this issue.

Dr. Jamieson also opined that it was medically necessary for plaintiff to use

a cane to ambulate because of plaintiff's continued Trendelenburg limp.  The

Commissioner speculates that this expert medical opinion is based solely on

plaintiff's subjective complaints, but the ALJ did not state that in her opinion.

Rather, she pointed to Dr. Kelley's records, which contained no indication that

plaintiff required the use of an assistive device.  While Dr. Kelley observed that

plaintiff had no limp in September 2009, he also observed a slight limp returning

in May, 2010.  It is not inconceivable that plaintiff's limp worsened by the same

time Dr. Jamieson saw him in April, 2011, nearly one year after Dr. Kelley

observed that the limp had returned.  Whether and to what extent plaintiff requires

the use of a cane is important because it could erode the sedentary occupational

base, according to SSR 96-9p:

> **Medically required hand-held assistive device:** To find
> that a hand-held assistive device is medically required,
> there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or
> standing, and describing the circumstances for which it is
> needed (i.e., whether all the time, periodically, or only in
> certain situations; distance and terrain; and any other
> relevant information). The adjudicator must always
> consider the particular facts of a case. For example, if a
> medically required hand-held assistive device is needed
> only for prolonged ambulation, walking on uneven

terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.7 For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p. Here, the ALJ rejected the only medical opinion on the issue of

whether and to what extent plaintiff required the use of an assistive device. As

explained in SSR 96-9p, where an assistive device is needed for balance, it is more

likely that the occupational base will be eroded. As plaintiff points out, there are

several notes in Dr. Kelley's records indicating that plaintiff had difficulty with balance.  For example, on May 12, 2009, Dr. Kelley noted that plaintiff had "difficulty with single leg balance" and plaintiff's reported to Dr. Kelley on August 14, 2009 that he had difficulty balancing.  (Tr. 298, 300).  While Dr. Kelley did not offer an opinion about whether or to what extent plaintiff needed an assistive device, this is not a situation where Dr. Kelley specifically opined that plaintiff did *not* require such a device.  In the face of a contrary medical opinion along with plaintiff's balance issues and the return of his limp noted in Dr. Kelley's records, the ALJ did not fully explain how she considered and reconciled all the medical evidence on this issue and the potential impact on the sedentary occupational base.  *See* SSR 96-8p (stating that if the ALJ's RFC finding "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

In addition, Dr. Kelley opined that plaintiff could perform a sit-down job and seemingly placed no restrictions on plaintiff's ability to sit.  However, Dr. Jamieson opined that plaintiff could only sit for 45 minutes at a time, which suggests the need for a sit-stand option.  The ALJ did not discuss this issue.  While the Commissioner correctly points out that it is the treating physician's opinion that is generally entitled to controlling or more substantial weight, in this case, the ALJ specifically ordered a consulting examination because it had been so long

since plaintiff had treated with Dr. Kelley (approximately one year) and the ALJ

thought that an updated medical opinion regarding plaintiff's physical limitations

was necessary.  The ALJ did not seem to consider that plaintiff's ability to sit or

his need for a sit-stand option had perhaps changed since Dr. Kelley offered this

opinion in May, 2010.  This is important because the need for a sit-stand option

may also erode the sedentary occupational base:

> **Alternate sitting and standing:** An individual may need
> to alternate the required sitting of sedentary work by
> standing (and, possibly, walking) periodically. Where
> this need cannot be accommodated by scheduled breaks
> and a lunch period, the occupational base for a full range
> of unskilled sedentary work will be eroded. The extent of
> the erosion will depend on the facts in the case record,
> such as the frequency of the need to alternate sitting and
> standing and the length of time needed to stand. The
> RFC assessment must be specific as to the frequency of
> the individual's need to alternate sitting and standing. It
> may be especially useful in these situations to consult a
> vocational resource in order to determine whether the
> individual is able to make an adjustment to other work.

SSR 96-9p.  Thus, in order for the Court to properly and fully review the basis for

the ALJ's decision, the ALJ must expressly and fully resolve these material

inconsistences.  *See* SSR 96-8p (stating that "the adjudicator must explain how

any material inconsistencies or ambiguities in the evidence in the case record were

resolved.").  This matter should be remanded for the ALJ to do so.  Because the

RFC and plaintiff's credibility are intertwined, the ALJ will also necessarily need

to re-evaluate plaintiff's credibility and may also require additional vocational expert testimony, depending on whether the new analysis reveals that the sedentary occupational base would be eroded.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 18, 2014          s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 18, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Howard D. Olinsky, Joshua L. Moore, Allen Duarte, Andrew J. Lievense, and the Commissioner of Social Security.

                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 12-15156